UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
UGURCAN MAVRUK and IMADETTIN :
MAVRUK, :
    :
                            Plaintiffs, :
    :                                        **COMPLAINT**
    :
            -against- :
    :
850 CORONA ENTERPRISES, INC. d/b/a :
ATLANTIC GAS STATION, :
SELIM SAVASCIOGLU, and PERI SOM as Heir of :
the Estate of KAYHAN SOM, :
    :
                            Defendants. :
-------------------------------------------------------------------- X

Plaintiffs Ugurcan Mavruk and Imadettin Mavruk (collectively, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of defendants 850 Corona Enterprises Inc. d/b/a Atlantic Gas Station ("Atlantic Gas"), Selim Savascioglu, and Peri Som, as Heir of the Estate of Kayhan Som (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.      Throughout their employment at Defendants' gas station, Defendants failed to pay Plaintiffs overtime pay for the hours they worked over forty in a week, pay them spread-of-hours pay for days in which their shifts spread over ten hours, and to provide them with accurate wage statements or wage notices.

2.      Plaintiffs bring this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and Sections 190 *et seq.* of the New York Labor Law ("NYLL"), to remedy Defendants' willful violations of those laws and recover unpaid overtime wages, spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this case pursuant to 29

U.S.C. § 216(b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

### VENUE

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.  All facts alleged in this Complaint occurred at Atlantic Gas Station, located and operated by Defendants at 850 North Corona Ave., Valley Stream, NY 11580, in the Eastern District of New York.

### THE PARTIES

**Plaintiffs**

5.      Plaintiff Ugurcan Mavruk ("Ugurcan") resides in Nassau County, New York.

6.      Defendants employed Ugurcan as a gas station cashier from in or about June 2011 through December 3, 2017.

7.      Plaintiff Imadettin Mavruk ("Imadettin") resides in Nassau County, New York.

8.      Defendants employed Imadettin as a station attendant from in or about 2008, when Defendants purchased the station, through December 3, 2017, except for a four-month period in mid-2012 he did not work due to an injury he sustained while working for Defendants.

9.      Throughout their employment with Defendants, Plaintiffs engaged in the production or in the handling or selling of, or otherwise working on, goods or materials that were moved in or produced for interstate commerce.

10.     During the relevant period, Plaintiffs were covered, non-exempt employees within the meaning of the FLSA and NYLL.

**Defendants**

2

11.     Defendant 850 Corona Enterprises, Inc. is a New York corporation that owns, operates, and does business as Atlantic Gas Station located in Valley Stream, New York.

12.     Atlantic Gas has employees engaged in interstate commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

13.     Within the three years preceding the filing of this complaint, Atlantic Gas has had an annual gross volume of sales in excess of $500,000.

14.     Atlantic Gas is an "enterprise engaged in commerce" within the meaning of the FLSA.

15.     Selim Savascioglu ("Savascioglu") is the owner of Atlantic Gas.

16.     Throughout Plaintiffs' employment, Savascioglu hired and fired Atlantic Gas employees, directed the manner in which employees performed their daily duties and assignments, and established and implemented the pay, work, and scheduling policies at Atlantic Gas.

17.     For instance, Savascioglu and his former partner, Som, hired Ugurcan in 2011 and Imadettin in or about 2008.

18.     Savascioglu fired both Plaintiffs on December 3, 2017.

19.     Throughout Plaintiffs' employment, Savascioglu distributed wage payments to Plaintiffs and determined their work schedules.

20.     Savascioglu exercised sufficient control over Atlantic Gas and Plaintiffs' employment to be considered Plaintiffs' employer under the FLSA and NYLL.

21.     Peri Som is the widow of Kayhan Som ("Som"), who was an owner of Atlantic Gas prior to his death in 2016.

3

22.     Peri Som currently owns an interest in Atlantic Gas.

23.     Peri Som is also named as Atlantic Gas's principal on the New York State Liquor Authority's website.

24.     Upon information and belief, no probate proceeding was initiated on behalf of Som's estate and Peri Som, as Som's surviving spouse, is an heir of Som's assets.

25.     Som set Plaintiffs' wage rates after hiring Plaintiffs with Savascioglu.

26.     Throughout Plaintiffs' employment, and until his passing, Som supervised and directed Plaintiffs' work at Atlantic Gas.

27.     Som exercised sufficient control over Atlantic Gas and Plaintiffs' employment to be considered Plaintiffs' employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

28.     Defendants did not pay Plaintiffs overtime compensation throughout their employment at Atlantic Gas.

29.     For the first month of his employment at Atlantic Gas, from approximately June to July 2011, Ugurcan trained without pay as a station cashier, working 12-hour shifts five days per week, from approximately 6:00 a.m. to 6:00 p.m. or 6:00 p.m. to 6:00 a.m., totaling approximately sixty hours per week.

30.     In approximately August 2011, Ugurcan began working a regular schedule for pay.

31.     From approximately August 2011 to December 3, 2017, Ugurcan worked the night shift seven days per week, from approximately 6:30 p.m. to 6:30 a.m., totaling approximately 84 hours per week.

32.     From approximately September 2017 to December 3, 2017, Ugurcan took one day off per month.

33.     Defendants paid Ugurcan a straighttime wage for all hours worked.

34.     From approximately August 2011 through the end of December 2013, Defendants paid Ugurcan $8.00 per hour, regardless of the number of hours he worked in the week.

35.     From approximately January 2014 through the end of December 2015, Defendants paid Ugurcan $9.00 per hour, regardless of the number of hours he worked in the week.

36.     From approximately January 2016 through the end of December 2016, Defendants paid Ugurcan $9.50 per hour, regardless of the number of hours he worked in the week.

37.     From approximately January 2017 to December 3, 2017, Defendants paid Ugurcan $10.00 per hour, regardless of the number of hours he worked in the week.

38.     Throughout his employment with Defendants, Imadettin worked as a gas station attendant, pumping gas into customers' cars.

39.     From approximately 2008, when Defendants took over the station from its previous owners, to mid-2012, and from approximately winter 2012 through the end of December 2016, Imadettin worked every day from 6:00 a.m. to 7:00 p.m., totaling approximately 91 hours per week.

40.     In 2016, Imadettin began taking one day off from work every fifteen days.

41.     From approximately January 2017 to December 3, 2017, Imadettin worked every day, except every fifteenth day, from 6:00 a.m. to 6:00 p.m., totaling approximately 84 hours per week.

42.     Defendants also paid Imadettin a straighttime wage for all hours worked.

43. From approximately January 2011 through the end of December 2013, except for the period Imadettin did not work in 2012, Defendants paid him $8.00 per hour, regardless of the number of hours he worked in the week.

44. From approximately January 2014 through the end of December 2015, Defendants paid Imadettin $9.00 per hour, regardless of the number of hours he worked in the week.

45. From approximately January 2016 through the end of December 2016, Defendants paid Imadettin $9.50 per hour, regardless of the number of hours he worked in the week.

46. From approximately January 2017 to December 3, 2017, Defendants paid Imadettin $10.00 per hour, regardless of the number of hours he worked in the week.

47. Defendants expected Plaintiffs to serve customers while they were eating meals.

48. Defendants failed to pay Plaintiffs the overtime premium of one and one-half their regular hourly rate for hours worked over forty in a workweek.

49. Defendants did not pay Plaintiffs an additional hour or pay at the basic minimum wage rate for days on which their shift exceeded ten hours.

50. Defendants failed to furnish Plaintiffs with wage notices at the time of hiring or whenever their wage rates changed.

51. Defendants failed to furnish Plaintiffs each time they were paid with an accurate wage statement including, inter alia, the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

### FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

52. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

6

53.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 207 and employed Plaintiffs.

54.     Defendants were required to pay Plaintiffs one and one-half (1½) times the regular rate at which Plaintiffs were employed for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

55.     Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA.

56.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

57.     Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

58.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

59.     Under the NYLL and supporting New York Department of Labor ("NYDOL") Regulations, Defendants were required to pay Plaintiffs one and one-half (1½) times the regular rate of pay for all hours they worked in excess of forty.

60.     Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the NYLL.

61.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

62.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

### THIRD CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

63.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

64.     Defendants willfully failed to pay Plaintiffs additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Plaintiffs' shifts spread over more than ten hours.

65.     By Defendants' failure to pay Plaintiffs spread-of-hours pay, Defendants willfully violated the Section 650 *et seq.*, of the NYLL and violated the supporting NYDOL regulations, including, but not limited to, 12 N.Y.C.R.R. § 146-1.6.

66.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

### FOURTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Annual Wage Notices)

67.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

68.     The NYLL and Wage Theft Prevention Act ("WTPA"), as well as the NYDOL regulations, such as but not limited to 12 N.Y.C.R.R. Part 142, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

69.     In violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs, at the time of hiring or whenever there was a change to their rate of pay, with wage notices

containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

70.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, as provided for by NYLL, Article 6, § 198(1-b).

### FIFTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements)

71.    Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

72.    The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

73.    Throughout Plaintiffs' employment with Defendants, Defendants paid Plaintiffs without providing a wage statement at the end of every pay period accurately listing, *inter alia*: the overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of the NYLL § 195(3).

74.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

      a.      declaring that Defendants have violated the overtime wage provisions of the FLSA, the NYLL, and the NYDOL Regulations;

      b.      declaring that Defendants violated the spread-of-hours pay provision of the NYLL and NYDOL Regulations;

      c.      declaring that Defendants violated the notice- and record-keeping provisions of the NYLL and WTPA;

      d.      declaring that Defendants' violations of the FLSA and NYLL were willful;

      e.      awarding Plaintiffs damages for unpaid overtime wages;

      f.      awarding Plaintiffs unpaid spread-of-hours pay;

      g.      awarding Plaintiffs liquidated damages, pursuant to the FLSA and to the NYLL;

      h.      awarding Plaintiffs liquidated damages as a result of Defendants' failure to furnish accurate wage statements and annual notices pursuant to the NYLL;

      i.      awarding Plaintiffs pre- and post-judgment interest under the NYLL;

      j.      awarding Plaintiffs' reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

      k.    awarding such other and further relief as the Court deems just and

proper.

Dated:  New York, New York
          February 6, 2018

                                    PECHMAN LAW GROUP PLLC

                                By: _____

                                      Louis Pechman
                                      Lillian M. Marquez
                                      488 Madison Avenue, 17th Floor
                                      New York, New York 10022
                                      (212) 583-9500
                                      pechman@pechmanlaw.com
                                      marquez@pechmanlaw.com
                                      *Attorneys for Plaintiffs*